IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TAMARA STANFIELD #195-943 | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. GLR-11-2361 |
| SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES | * * | |
| VICKIE BYBEE, *EXECUTIVE VICE PRESIDENT OF CORIZON, INC., f/k/a/ CORRECTIONAL MEDICAL SERVICES, INC.*[1] | * * | |
| CORIZON, INC., f/k/a/ CORRECTIONAL MEDICAL SERVICES, INC. | * | |
| JOHN J. ROWLEY, *WARDEN, NORTH BRANCH CORRECTIONAL INSTITUTION* | * | |
| J. PHILLIP MORGAN, *WARDEN, WESTERN CORRECTIONAL INSTITUTION* | * | |
| COLIN OTTEY, *M.D.* | * | |
| Defendants | | |

* * *

**MEMORANDUM**

On August 22, 2011, Tamara Stanfield, a Maryland state prisoner currently incarcerated at the Western Correctional Institution in Cumberland ("WCI"), filed a civil rights action seeking money damages and injunctive relief mandating he be transported to a hospital for an MRI.[2] Plaintiff alleges that he is in constant pain because Defendants are indifferent to back and arm

---

[1] The Clerk shall amend the docket to reflect the complete and proper delineation of the named Defendants.

[2] Magnetic resonance imaging (MRI) uses a magnetic field and pulses of radio wave energy to make pictures of organs and structures inside the body. In many cases MRI gives different information about structures in the body than can be seen with an x-ray. See http://www.webmd.com/a-to-z-guides/magnetic-resonance-imaging-mri. Plaintiff first requested an MRI on January 21, 2010. ECF No. 5 at 20.

injuries he sustained on August 3, 2008, after falling from his bunk[3] while housed at North Branch Correctional Institution (NBCI). ECF Nos. 1 and 5. Plaintiff names the Secretary of the Department of Public Safety and Correctional Services ("DPSCS") and the Wardens of NBCI and WCI (collectively, "the Correctional Defendants"), as well as Corizon, Inc. (formerly known as Correctional Medical Services, Inc.), the contractual private health care corporation charged with providing health care to Maryland's prisoners, and its employees, Vickie Bybee, a former vice president, and physician Colin Ottey (collectively, "the Medical Defendants").

The Medical Defendants have filed a dispositive motion which shall be construed as a motion for summary judgment.[4] ECF No. 17. The Correctional Defendants have filed a dispositive motion that shall be construed as a motion to dismiss. ECF No. 24. Plaintiff was granted an extension of time and has responded, ECF No. 28, and the Medical Defendants have filed a reply. ECF No. 29. Upon review of papers filed, the Court finds an oral hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2011).

**Standard of Review**

Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   Bell Atlantic Corporation v. Twombley, 550 U.S. 544, 554 (2007).

---

[3] Three days after the incident, Plaintiff told medical personnel the injury was sustained when he "caught himself" to prevent falling from his upper bunk. ECF No. 5, Exhibit 1 at 2 (Nurse Protocol of August 6, 2008, completed by Dana Pratt, RN). The precise manner in which the injury occurred is not relevant to the issue of whether appropriate medical care was subsequently provided. Plaintiff's exhibits indicate his back pain may have begun two years earlier. ECF No. 5, Exhibit 1 at 9-11.

[4] The pleadings will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered. See Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007).

"[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people. . .'" Id. at 557-558  (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005).   "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).   In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).   However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." Takacs v. Fiore, 473 F. Supp. 2d 647, 651 (D. Md. 2007).

Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).   The court

3

should "view the evidence in the light most favorable to. . .the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

<u>Eighth Amendment Requirement for Medical Care</u>

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or Defendants's failure to act) amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, Plaintiff was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that

4

risk." Rich v. Bruce, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995), quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383 (4th Cir. 2001), citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

    Supervisory Liability

Plaintiff seeks damages from two of the Medical Defendants, Corizon and its former executive vice president, Vickie Bybee, based solely upon vicarious liability, otherwise known as the doctrine of respondeat superior. The law in the Fourth Circuit is well established that the doctrine does not apply in § 1983 claims, irrespective of whether the Defendant is a private corporation or a municipality or other public agency. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); Nedd v. Correctional Medical Services, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992), citing Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982); McIlwain v. Prince William Hospital, 774

F. Supp. 986, 990 (E.D. Va. 1991).  Thus, Medical Defendants Corizon and Bybee are entitled to dismissal in this case.

The  Correctional Defendants appear to be also named solely because of their supervisory status and are likewise entitled to dismissal, as liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001).  (Citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Plaintiff has pointed to no action or inaction on the part of the Correctional Defendants that resulted in a constitutional injury.  Accordingly, these Defendants shall be dismissed from this action.

**Background**

Record evidence confirms that Plaintiff filed a sick call slip on August 3, 2008, indicating he hurt his back and right arm that morning while trying to lower himself from his upper bunk.[5]

---

[5] Plaintiff is diabetic.  At the time of injury he stood 5 feet 7 inches and weighed 235 pounds.  ECF No. 5, Exhibit 1 at 1, 8.  Plaintiff now reports he has suffered "parallel leg and finger pain associated with his fall."  ECF No. 28 at 6.  Medical records indicate he suffered a small chip fracture in his right second finger as a result of the fall.  ECF No. 17, Exhibit 3a.  The finger became problematic in March of 2011.  Physical therapy was ordered to increase finger strength.  ECF No. 5 at 50.  On July 6, 2010, Plaintiff was diagnosed with "trigger finger" on the right fifth finger – not the finger injured during the fall.  Id., Exhibit 7g.  Trigger finger, also known as stenosing tenosynovitis, results in a finger or thumb getting stuck in a bent position and then straightens with a snap.  Often painful, trigger finger is

ECF No. 5, Exhibit 1 at 1.  On August 6, 2008, Nurse Pratt examined Plaintiff, who reported pain on a scale of three out of ten (with ten being the most severe).  The nurse found Plaintiff showed no sign of distress, walked without difficulty, and refused medication.  Id., Exhibit 1 at 2-3.  On September 1, 2008, Plaintiff submitted another sick call slip indicating the back and elbow pain had persisted.  A nurse examined him the following day and noted that he would be scheduled with Dr. Ottey.  Id., Exhibit 1 at 4.

On September 13, 2008, Plaintiff submitted another sick call slip indicating the appointment had not occurred.  Id., Exhibit 1 at 5.  On September 17, 2008, Dr. Ottey examined Plaintiff, ordered spinal x-rays and prescribed methocarbamol[6] (a muscle relaxer) and Ibuprofen for pain.  Dr. Ottey counseled Plaintiff on diet and exercise, including physical activities and weight loss, as these lifestyle changes would help alleviate back pain.  Id., Exhibit 1 Affidavit of Dr. Colin Ottey, M.D., at 6-7.  This appointment constitutes the sole examination of Plaintiff performed by Dr. Ottey regarding Plaintiff's complaints of back pain.  ECF No. 17, Exhibit 1, ¶¶ 5, 9-13 and Exhibit 4 through 4-b.[7]  To the extent Plaintiff's lawsuit is premised on his belief that Dr. Ottey did not examine him in a more timely manner, the record evidence, as set forth below, does not demonstrate that this delay, without more, constitutes a violation of the Eighth Amendment.  Dr. Ottey is entitled to summary judgment.

---

caused by a narrowing of the sheath that surrounds the tendon in the affected finger. People whose work or hobbies require repetitive gripping actions are more susceptible and trigger finger is more common in those with diabetes. See http://www.mayoclinic.com/health/trigger-finger/DS00155.  Treatment options for Plaintiff's trigger finger are not at issue here.

[6] Methocarbamol is a generic name for the muscle relaxer known as Robaxin.  See http://www.drugs.com/methocarbamol.html.

[7] Defendant Ottey next examined Plaintiff on June 2, 2010, for symptoms of rectal bleeding.  During that visit, Plaintiff did not report problems with back pain. ECF No. 17, Exhibit 1, ¶ 10, Exhibit 5. Ottey also saw Plaintiff on August 7, 2010, at which time Plaintiff complained of hypertension, visual disturbances, foot ulcers, fatigue and tremors. Again, no symptoms of back pain were reported.  Id., Exhibit 1, ¶ 11, Exhibit 6.

The Court's inquiry, however, does not end there; at issue is whether the ongoing medical care provided by medical personnel concerning Plaintiff's back pain is constitutionally adequate. As noted in Dr. Ottey's affidavit, Plaintiff is overweight and suffers from diabetes, diabetic retinopathy, degenerative joint disease, and hypertension, and has been diagnosed with back pain that radiates to the left hip. Id., Exhibit 1, at ¶¶ 2-3; Exhibit 7. The record demonstrates that these health problems, including back pain, have not been ignored.

On January 14, 2009, Dr. Samuel Deshay examined Plaintiff, ordered blood work and other tests, and reviewed Plaintiff's medications. Dr. Deshay ordered an additional series of spinal x-rays, placed Plaintiff on a 2400 calorie diet, and prescribed three doses of 600 mg. Ibuprofen daily for back pain. Id., Exhibit 7a. On July 22, 2009, Dr. Hubert Mickel noted that two x-rays were negative, yet Plaintiff continued to experience sciatic pain going down the left leg into the large toe. Dr. Mickel opined that the pain was in the left paraspinal area going down the mid-back. Ibuprofen was continued. On October 16, 2009, Dr. Mickel again continued the pain medication and ordered various blood tests and urinalysis to monitor Plaintiff's other medical problems related to diabetes, hypertension, and hyperlipidemia. Id., Exhibit 7e. On July 6, 2010, Plaintiff complained of worsening lower back pain after he again fell from his top bunk. Upon examination, Dr. Ava Joubert found no objective evidence of disease in Plaintiff's back or spine, Id., Exhibit 7g. X-rays were reviewed by Dr. Joubert on July 16, 2010; when compared to previous x-rays, no evidence of acute disease or change in spinal column intervals were found. Id., Exhibit 7i. Muscle spasm and decreased lumbar mobility with moderate kyphosis were apparent and Plaintiff was found to be obese. Id., Exhibit 7j.

Dr. Joubert examined Plaintiff again on October 13, 2010, for complaints of back pain. Plaintiff reported moderate burning pain of two years' duration radiating to the left buttock, a

condition known as paresthenesia.[8] Dr. Joubert ordered additional spinal x-rays and explained to Plaintiff, who had tested positive for elevated prostate-specific antigen ("PSA"),[9] the need to rule out prostate cancer as a cause of his lower back pain. Id., Exhibit 7m. On November 10, 2010, Dr. Joubert noted Plaintiff was scheduled for a prostate biopsy. His back pain had continued with an associated symptom of "locking." Lack of joint motion, limping, tenderness and tingling were not found. Id., Exhibit 7n. Plaintiff was prescribed Neurontin for his pain.[10] ECF No. 5 at 47.

On March 10, 2011, Dr. Stephen D. Ryan examined Plaintiff for complaints of back pain and ordered physical therapy. Id., Exhibit 8. Therapy sessions began later that month. At the outset, Plaintiff reported significant lessening of pain after stretches and other exercises. Id., Exhibit 8a-b. On April 11, 2011, however, Plaintiff reported an increase in pain, probably caused by cold wet weather. Id., Exhibit 8e. After one missed appointment, Plaintiff resumed therapy and reported that therapy decreased his back pain. Id., Exhibits 8f-g. Therapy sessions ended, but Plaintiff was given exercises to continue on his own. Most of Plaintiff's complaints to medical personnel have been related to his diabetes, not back pain. ECF No. 17, Exhibits 2-89.

**Analysis**

Plaintiff's allegation that he was denied prompt, continuing and appropriate treatment for his unresolved back pain is contradicted by the record. The named Defendant, Dr. Ottey,

---

[8]Paresthenesia is an abnormal sensation such as numbness, tingling or burning. See http://www.medterms.com/script/main/art.asp?articlekey=4780.

[9] High PSA levels may indicate prostate cancer as well as benign problems, including urinary tract infections. See http://www.cancer.gov/cancertopics/factsheet/Detection/PSA.

[10] Neurontin (generic name Gabapentin) is prescribed to treat neurological and chronic pain. ECF No. 5 at 47. See *http://www.webmd.com/drugs/mono-8217-GABAPENTIN+-ORAL.aspx?drugid=9845&drugname=Neurontin.*

provided initial treatment for what appeared to be a relatively minor complaint of back pain after a fall. Thereafter, other medical personnel were primarily responsible for Plaintiff's health care, which included diagnostic work-up and treatment for ongoing episodes of back pain. Unlike the Plaintiffs whose cases are cited in his opposition motion, Plaintiff has not been diagnosed with degenerative disc disease or herniated or migrated discs. Medical personnel do not doubt that Plaintiff suffers intermittent lower back pain; however, repeated x-rays do not suggest a reason for the pain. Plaintiff is demanding additional diagnostic testing using MRI technology; in contrast, medical personnel have acted conservatively by prescribing increasing doses of pain medication and suggesting Plaintiff lose weight and perform basic exercises to alleviate his symptoms.

Plaintiff has not been successful in losing weight. ECF No. 5 at 66. Nothing suggests that additional diagnostic measures would not be taken if deemed necessary by health care experts. At best, Plaintiff is in disagreement with medical personnel as to the proper course of treatment at this time for his back pain. As noted herein, such disagreement does not support an Eighth Amendment claim. See Wright, 766 F.2d at 849.

## Conclusion

For the reasons stated above, the Medical Defendants' motion for summary judgment shall be granted and the Correctional Defendants shall be dismissed. A separate order follows.

June 25, 2012

/s/
_____
George Levi Russell, III
United States District Judge